**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| PAUL J. LIGGIO and MARGE M. LIGGIO,<br><br>Plaintiffs,<br><br>v.<br><br>JASON WEIGNER,<br><br>Defendant. | Case No. 2:15-cv-01973-APG-CWH<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>(ECF No. 32) |

Plaintiffs Paul and Marge Liggio filed their First Amended Complaint alleging that defendant Jason Weigner has failed to pay amounts due under three promissory notes. The Liggios bring claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, negligent misrepresentation, fraudulent misrepresentation/inducement, breach of fiduciary duty, declaratory relief, and elder abuse.

Weigner moves to dismiss the Liggios' claims for lack of personal jurisdiction, improper venue, and lack of standing. Weigner also moves to dismiss each claim for failure to state a claim.

I deny Weigner's arguments of lack of personal jurisdiction, improper venue, and lack of standing. I grant in part and deny in part Weigner's motion to dismiss for failure to state a claim, but I also grant the Liggios leave to amend.

**I. BACKGROUND**

In 2008, Paul and Marge Liggio, along with Kerry and Margie McCombe and Myriad Equity Trust, invested (through a company) in unspecified "investment opportunities" with Curtis Weigner, a long-time friend of the Liggios. ECF No. 29 at 3. In 2009, Curtis told Paul Liggio about investments Curtis had made with Curtis's son, defendant Jason Weigner ("Weigner"). *Id.* at 4. It appears from the First Amended Complaint that Curtis had invested

with his son the funds that had been invested with Curtis by the Liggios, the McCombes, and Myriad Equity Trust. *Id.*

In late 2010, Jason Weigner admitted to Paul Liggio that Weigner's now-estranged wife had embezzled millions of dollars from Weigner, including money that Weigner had received from Curtis (apparently that had been invested by the Liggios, the McCombes, and Myriad Equity Trust). *Id.* at 4–6. Weigner apparently had received $300,000 from the Liggios, $110,000 from the McCombes, and $110,000 from Myriad Equity Trust, all of which had been embezzled. *Id.*

Weigner stated that he would personally repay those amounts but he needed time to recover from his own losses related to the embezzlement and to resuscitate his chiropractic practice. *Id.* He agreed to sign promissory notes establishing a payment schedule as well as security agreements placing a lien on his personal assets to satisfy the notes. *Id.* at 7.

Weigner entered into three promissory notes with the Liggios, the McCombes, and Myriad Equity Trust. The notes specified the interest rates and monthly payment schedule, and each contained a forum-selection clause providing that the notes "shall be governed by and construed according to the laws of the State of Nevada with venue exclusively in the State and Federal Courts of the State of Nevada." *Id.* at 7–8.

The notes and security agreements were signed on January 20, 2011, and Weigner paid the amounts contractually due for three months, but then stopped. *Id.* at 8. When the Liggios requested payment from Weigner, he refused and claimed he had filed bankruptcy, although he apparently never did. *Id.* The Liggios, the McCombes, and Myriad Equity Trust assigned their promissory notes to Acctcorp, which in turn assigned all three notes to the Liggios. *Id.* at 8–9.

**II. ANALYSIS**

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). However, I do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual

allegations in the plaintiff's complaint. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994). A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.

### A. Personal Jurisdiction and Venue

Weigner moves to dismiss based on lack of personal jurisdiction and improper venue. The Liggios respond that the forum-selection clause contained in the promissory notes waives both arguments.

"[P]arties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction. . . . Where such forum-selection provisions have been obtained through 'freely negotiated' agreements and are not 'unreasonable and unjust,' their enforcement does not offend due process." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985) (internal citations omitted). This is true even where, as here, the forum-selection clause refers to "venue" and does not explicitly waive the personal jurisdiction requirement. *See Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1407 (9th Cir. 1994). Forum-selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972). A forum-selection clause may be "unreasonable" where: (1) incorporation of the clause was the product of "fraud, undue influence, or overweening bargaining power"; (2) a party will "for all practical purposes be deprived of his day in court" because of inconvenience or unfairness of the selected forum; or (3) enforcement of the clause would contravene a strong public policy of the forum state. *Id.* at 12, 15, 18.

Weigner does not argue that any of these factors is present with respect to the forum-selection clauses. I therefore deny Weigner's motion to dismiss for lack of personal jurisdiction and improper venue.

**B. Standing Regarding the Second and Third Promissory Notes**

Weigner argues that the Liggios lack standing to enforce the second and third promissory notes (those originally held by the McCombes and Myriad Equity Trust) for failure to adequately plead that the notes were validly assigned to them. The Liggios, however, have pleaded that the notes were assigned from the original holders to a corporation called Acctcorp, and thereafter assigned from Acctcorp to the Liggios. The Liggios also provide a declaration alleging these facts in more detail, as well as a copy of the assignments. ECF No. 34. The Liggios therefore have adequately alleged a right to enforce the notes at this stage. Consequently, I deny Weigner's argument that the Liggios lack standing.

**C. Breach of Contract**

*1. Consideration*

Weigner argues the notes are not supported by consideration because the Liggios' investment for which they are seeking repayment was a past transaction entered into with Weigner's father, Curtis, and not with Weigner. He thus contends the notes were a gratuitous, unenforceable promise. The Liggios respond that they have adequately alleged facts in support of this claim. ECF No. 33 at 19.

"A benefit conferred or detriment incurred in the past is not adequate consideration for a present bargain." *Clark Cty. v. Bonanza No. 1*, 615 P.2d 939, 943 (Nev. 1980). However, consideration is present if an "instrument is issued or transferred as payment of, or as security for, an antecedent claim against any person, whether or not the claim is due." Nev. Rev. Stat. § 104.3303. The Uniform Commercial Code comment on the section from which this Nevada statute was adopted clarifies that the section "applies to any claim against any person; there is no requirement that the claim arise out of contract. In particular the provision is intended to apply to an instrument given in payment of or as security for the debt of a third person, even though no concession is made in return." Unif. Commercial Code § 3-303 cmt. 4.

Here, the promissory notes and security agreements are plausibly characterized as payment of and security for the debts of Curtis Weigner and/or Jason Weigner.  In either case, consideration is present.

*2. The Liggios' Performance*

Weigner argues that the First Amended Complaint does not allege that the Liggios provided Weigner written notice of default, which was a condition precedent to initiating litigation.  The First Amended Complaint states that "[p]rior to the commencement of this action, demand was made for repayment," and that "[i]n 2011, when Weigner first defaulted, [] Plaintiffs contacted Weigner for payment. . . ." ECF No. 29 at 3, 8.  Viewing the facts alleged and reasonable inferences in the Liggios' favor, they plausibly allege that they notified Weigner of the default as required by the notes.

*3. Breach*

Weigner contends the Liggios have inadequately described how he breached the terms of the promissory notes.  The First Amended Complaint alleges Weigner made three months of payments according to the agreed upon schedule, then ceased paying and refused to make further payments.  Weigner's alleged breach is adequately pleaded.

*4. Damages*

Weigner argues that the Liggios failed to specify the damages to which they are entitled for breach.  Federal Rule of Civil Procedure 8(a)(3) requires merely an allegation of the type of relief being sought. *See Milgard Tempering, Inc. v. Selas Corp. of Am.*, 761 F.2d 553, 557 (9th Cir. 1985) ("Milgard's complaint asked for 'past and future damages for breach of express and implied warranties.'  Compensatory damages were sufficiently pleaded.").  The Liggios have alleged that Weigner's breach has caused them damages in excess of $75,000, for which they request relief.  This allegation is sufficient under Rule 8(a)(3).

In sum, none of Weigner's arguments suffices to bar the Liggios' breach of contract claim at this stage.

/ / / /

**D. Breach of the Covenant of Good Faith and Fair Dealing**

Weigner asserts that the Liggios merely recite the elements for this claim, rather than alleging sufficient facts to support it. "The covenant of good faith and fair dealing is implied into every commercial contract. . . ." *Ainsworth v. Combined Ins. Co. of Am.*, 763 P.2d 673, 676 n. 1 (Nev. 1988) (citation omitted). The covenant is violated "[w]hen one party performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied. . . ." *Perry v. Jordan*, P.2d 335, 338 (Nev. 1995).

The Liggios' allegation that Weigner stopped making payments on the notes after three months and refused to make further payment sufficiently alleges conduct that was "unfaithful to the purpose of the contract" and thus denied the "justified expectations of the other party." I therefore deny Weigner's motion to dismiss this claim.

**E. Unjust Enrichment**

Weigner argues that, while an unjust enrichment claim may be pleaded in the alternative to a breach of contract claim, it cannot be "entirely predicated upon a defendant's performance under an express agreement. . . ." ECF No. 32 at 14. "An action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement." *Leasepartners Corp. v. Robert L. Brooks Trust*, 942 P.2d 182, 187 (Nev. 1997). However, Weigner's argument is premature because the Liggios may plead an unjust enrichment claim in the alternative to the contract claim, particularly where Weigner denies that the promissory notes are enforceable contracts. *See Hydrotech, Inc. v. Ames Const., Inc.*, No. 3:12-CV-00262-LRH-WHC, 2013 WL 551510, at *2 (D. Nev. Feb. 12, 2013) (citing Fed. R. Civ. P. 8(a)(3)). I therefore deny Weigner's motion to dismiss this claim.

/ / / /

/ / / /

/ / / /

**F. Negligent Misrepresentation and Fraudulent Misrepresentation/Inducement[1]**

Weigner argues that the negligent misrepresentation and fraudulent inducement claims do not meet the heightened pleading standard under the Federal Rules. An allegation of fraud requires:

> (1) a false representation made by the defendant; (2) defendant's knowledge or belief that the representation is false (or insufficient basis for making the representation); (3) defendant's intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation; (4) plaintiff's justifiable reliance upon the misrepresentation; and (5) damage to the plaintiff resulting from such reliance."

*Albert H. Wohlers & Co. v. Bartgis*, 969 P.2d 949, 958 (Nev. 1998). In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Fed. R. Civ. P. 9(b). In other words, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Under Nevada law, "[m]isrepresentation is a form of fraud where a false representation is relied upon." *Larson v. Homecomings Fin., LLC*, 680 F. Supp. 2d 1230, 1234 (D. Nev. 2009) (dismissing negligent misrepresentation claim for failing to meet heightened pleading standard).

The Liggios allege that Weigner "made false statements of material fact as set forth [in the 'Allegations' section]" and "knew or should have known that the statements of material fact . . . were false." ECF No. 29 at 13. The Liggios also allege that Weigner "intentionally failed to exercise reasonable care and/or competence in obtaining or communicating pertinent information to Assignors and Plaintiff concerning the Promissory Notes and/or Security Agreements. Specifically, the Defendant has failed to duly perform all conditions, covenants and promises on his part to be performed." *Id.* at 11.

---

[1] The Liggios' fraudulent misrepresentation and fraudulent inducement claims are essentially identical, so I consider them together.

The First Amended Complaint does not adequately allege fraud, as a failure to perform under a contract constitutes a breach of contract but generally not fraud. The allegations do not specify "the who, what, when, where, and how" of the alleged misrepresentation. The lack of clarity about the specifics of the fraud claim causes the claim to fail the heightened pleading standard imposed by Rule 9(b). Similarly, the First Amended Complaint fails to sufficiently allege what false representations were negligently made and how they constitute a claim separate from breach of contract. I therefore grant Weigner's motion to dismiss the negligent misrepresentation and fraudulent inducement claims, with leave to amend.

**G. Breach of Fiduciary Duty**

Weigner argues that a debtor-creditor relationship of the type he had with the Liggios does not create a fiduciary duty that would give rise to this claim. "The essence of a fiduciary or confidential relationship is that the parties do not deal on equal terms, since the person in whom trust and confidence is reposed and who accepts that trust and confidence is in a superior position to exert unique influence over the dependent party." *Hoopes v. Hammargren*, P.2d 238, 242 (Nev. 1986). "Such a relationship imposes a duty of utmost good faith." *Id.* Confidential relationships exist "where one party gains the confidence of the other and purports to act or advise with the other's interests in mind." *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 880–81 (9th Cir. 2007) (internal citations omitted). "[T]he Nevada Supreme Court has yet to recognize the existence of a fiduciary relationship arising from the relationship between a lender and a debtor." *Yerington Ford, Inc. v. Gen. Motors Acceptance Corp.*, 359 F. Supp. 2d 1075, 1088 (D. Nev. 2004) (reversed on other grounds by *Giles*, 494 F.3d 865). A confidential relationship is present where:

> (1) . . . the conditions would reasonably have caused [plaintiff] to place special trust and confidence in [defendant], and (2) . . . [defendant] would reasonably have known of this confidence. . . . The fact that [plaintiff] was a close friend with a mid-level management employee of [defendant] . . . is insufficient to overcome the general rule that a lender-debtor relationship does not give rise to a fiduciary duty.

*Id.*

The Liggios have not alleged that they reposed special trust or confidence in Weigner at the time they entered into the promissory notes. The allegations do not suggest they believed Weigner would "act or advise with [their] interests in mind." On the contrary, the Liggios allege that they were hesitant to enter into an agreement with Weigner, and they agreed to the notes only with an accompanying security agreement. Thus, the Liggios have not alleged facts to plausibly suggest that they placed special trust and confidence in Weigner sufficient to create a fiduciary or confidential relationship. I therefore grant Weigner's motion to dismiss the fiduciary duty claim, with leave to amend.

### H. Declaratory Relief

Weigner argues that claim for declaratory relief must be dismissed because that is a remedy and not a separate cause of action. "[T]he Declaratory Judgment Act . . . authorizes a federal court to 'declare the rights and other legal relations of any interested party seeking such declaration,'" but "alone does not create a federal cause of action." *Harris Cty. Texas v. MERSCORP Inc.*, 791 F.3d 545, 552 (5th Cir. 2015) (citing 28 U.S.C. § 2201(a)). "The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Fed. R. Civ. P. 57. The Liggios pleaded their request for declaratory relief as a separate claim, which is improper. While they may able to obtain that remedy, it should be pleaded as a remedy, not a separate claim. I therefore will dismiss the Sixth claim for Relief requesting declaratory relief, but grant the Liggios the opportunity to plead it in their prayer for relief.

### I. Elder Abuse

Weigner argues that the Liggios fail to allege "exploitation" under Nevada's elder abuse statute because they do not specify how Weigner gained their "trust and confidence" in the context of a "continuing and long-term relationship." The statute states, in relevant part, that "if an older person . . . suffers . . . a loss of money or property caused by exploitation, the person

who caused the . . . loss is liable to the older person . . . for two times the actual damages incurred by the older person. . . ." Nev. Rev. Stat. § 41.1395.

> 'Exploitation' means any act taken by a person who has the trust and confidence of an older person . . . to: (1) Obtain control, through deception, intimidation or undue influence, over the money, assets or property of the older person . . . with the intention of permanently depriving the older person . . . of the ownership, use, benefit or possession of that person's money, assets or property; or (2) Convert money, assets or property of the older person with the intention of permanently depriving the older person . . . of the ownership, use, benefit or possession of that person's money, assets or property. . . . 'Older person' means a person who is 60 years of age or older.

*Id.*

The standard to find a relationship of "trust and confidence" under the statute is not as exacting as that required for a finding of a fiduciary relationship. *See, e.g.*, *Jung v. BAC Home Loans Servicing, LP*, No. 2:10-CV-2236-JCM-GWF, 2011 WL 2462248, at *1 (D. Nev. June 17, 2011) (dismissing a claim for breach of fiduciary duty, but maintaining a claim for breach of Nevada's elder abuse statute). The statute "is a means to recover special damages under certain circumstances. . . . Special damages must be pleaded." *Doe v. Clark Cty. Sch. Dist.*, No. 2:15-CV-00793-APG-GWF, 2016 WL 4432683, at *13 (D. Nev. Aug. 18, 2016) (citing Fed. R. Civ. P. 9(g)).

The Liggios have not sufficiently alleged that Weigner possessed the trust and confidence of the Liggios at the time the parties agreed to the notes. As noted above, the Liggios allege that they were hesitant to enter into an agreement with Weigner, and they only agreed to the notes with an accompanying security agreement. I therefore grant Weigner's motion to dismiss the elder abuse claim, with leave to amend.

### III.   CONCLUSION

IT IS THEREFORE ORDERED that Weigner's motion to dismiss **(ECF No. 32) is GRANTED in part and DENIED in part** as more fully set forth in this order. The Liggios are granted leave to amend the complaint to cure the identified defects if they can do so. The

Liggios must file the amended complaint within 21 days of entry of this order. If they fail to do so, the case will proceed on the remaining claims.

DATED this 28th day of September, 2016.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE